GREMILLION, Judge,
dissenting.
| tThis concursus proceeding involves the dispute between an insurer and its insured over entitlement to the money derived from a settlement negotiated by the insurer with a third party tortfeasor of the intervention filed by the insurer in its insured’s employee’s suit against the tortfea-sor. The insured contested the insurer’s subrogation and the tortfeasor deposited the proceeds into the registry of the court and invoked the concursus.
Cajun’s policy was a retrospective premium policy, in which the insurer agreed to charge a discounted premium, but reserved the right to charge additional premiums during the policy term if claims were made. For instance, Cajun ivould have paid premiums of $168,307 under a traditional policy, but only paid $113,158 under the retrospective premium scheme. However, after Malveaux’s claim, Petrosu-rance charged Cajun an additional $77,137 in retrospective premiums.
The majority concludes that the insured is entitled to $41,429 and the insurer is entitled to $17,571. It achieves this result by recalculating the retrospective premium. The recalculating of the premium is unwarranted, and does great violence to the policy language.
The policy language here is clear and unambiguous. The premium the insured owed was to be calculated using the loss information available as of six months after the rating plan period ends and annually thereafter. The recovery of this settlement in Malveaux’s case — which I again emphasize was achieved solely through the ^efforts of the insurer — occurred well af *1164 ter the rating plan period and should not have been used at all in calculating the premium.
The majority bypasses this provision by concluding that there was no “freeze out” period in the policy and by pointing out as evidence that the premium calculation was never “final” the fact that the insurer looked back over the plan and may have given a refund to the insured four years after the fact. This is a classic example of no good deed going unpunished. This, in my opinion, does not reopen the premium calculation because no new information was used by the insurer in determining that it owed a refund to the insured, whereas the recovery of the settlement by the insurer clearly constitutes new information not available as of six months after the rate plan period. The policy did indeed contain a “freeze out” provision: the premium was to be based on the information available as of six months after the rating plan period.
The insurer prosecuted the intervention to recover the lien and settled the lien at its expense by virtue of the subrogation provision. While recognizing the existence of the subrogation provision, the opinion effectively writes it out of the policy.
I would also point out that during the period for which Cajun was charged the retroactive premium, Petrosurance was exposed to the prospect of additional claims. Although it was fortunate for all that no additional claims arose, the fact remains that Petrosurance was forced to factor the potential for additional claims into its business decisions. Had additional claims arisen, Petrosurance would have covered them; and under its contract, no additional premiums could have been charged, as the policy capped the retrospective premium at the amount Cajun was charged as a result of Malveaux’s claim. Petrosurance would have been forced to honor this arrangement, and Cajun would have had no reason to complain. Yet, under the one hypothetical such an arrangement could have inured to the benefit of Petrosurance, the majority |sdoes not require Cajun to honor its commitment. Cajun was not forced to purchase a retrospective premium policy. It negotiated the terms of the policy with the anticipation that it would result in substantial savings. This was a calculated business decision. Its miscalculation should not result in a decision that completely abrogates the language of the policy.
I respectfully dissent.